IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
FLORIDA

TRIAXIAL MEDICAL, INC.,
A Florida corporation,

    Plaintiff,

v.

INTERNET BRANDS, INC., a Delaware
corporation authorized to do business in
Florida,

    Defendant.
_____/

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

    Plaintiff, TRIAXIAL MEDICAL, INC. ("TMI" or "Plaintiff"), sues INTERNET BRANDS, INC., ("IB" or "Defendant"), by and through its undersigned attorneys, and alleges as follows:

JURISDICTION AND VENUE

1. This is an action against Defendant for infringement of registered copyrights in violation of the Copyright Act, 17 U.S.C. § 501.

2. This Court has jurisdiction pursuant to the Copyright Act 17 U.S.C. §§ 101 *et seq.,* and 28 U.S.C. § 1331 for a federal question under the laws of the United States and under 28 U.S.C. § 1338(a).

3. This Court also has diversity jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant have diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

1

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400.

5.      Upon information and belief, the conduct of Defendant that is the subject of this action occurred, and is or may be continuing to occur, in this judicial district. Defendant has subjected itself to personal jurisdiction in the State of Florida.

6.      This Court has jurisdiction over the parties and over the subject matter of this action pursuant to 15 USC § 1121, and 28 USC §§ 1331, 1332, and 1367.

## THE PARTIES

7.       Plaintiff, TMI, is a resident Florida corporation, and conducts business in this judicial district.

8.      Defendant IB, is a Delaware corporation, authorized and registered to do business in Florida, resides in this judicial district, and has directed, controlled, participated in, and has been the moving force behind the infringing activity of Defendant as described herein.

9.      Defendant, IB is an entity that offers the copyrighted materials to others for financial gain, and without authority or permission of Plaintiff.

## THE COPYRIGHT

10.     This is a Complaint based on copyright infringement of the work embodied in US Registration Numbers:  TX6-899-442, TX7-288-576, TX7-605-790, TX7-609-051, TX7-289-912, TX7-462-923 ("the Work") (Exhibit A).

11.     The Works was created in 2003-2012 and was first published in 2003, 2005, 2008, 2009, 2010, 2011, 2012, and are titled www.labiaplastysurgeon.com., www.bodyimplants.com, www.calfimplants.com, www.vaginoplastysurgeon.com.

12.     The Work has been published on Plaintiff's website   www.labiaplastysurgeon.com,

2

www.bodyimplants.com, www.vaginoplastysurgeon.com, and www.calfimplants.com, (plaintiff's "website") since at least as early as August 2003. The Work is globally considered to be the number one web portal dealing with feminine cosmetic/reconstructive surgery and cosmetic/reconstructive surgery for trauma, congenital deformities, and acquired pathological disorders (Exhibit B).

13. The Work was written by Geoffrey Cook, a renowned technical medical writer who owns Plaintiff's company, and who has authored the content found on many highly and well respected websites on medical issues, including, cosmetic surgery, and has authored/administered nationally-recognized, published clinical studies in peer-review medical journals.

14. The Work is highly original, and contains content and style deserving of the requisite originality needed for copyright protection.

15. Plaintiff's business model is based on the right to exploit the Work, and to allow others to use the content with the express written permission of Plaintiff. It is Plaintiff's business to charge a fee for the use of the Work, and in fact, has a nationwide stable of qualified surgeons who pay for use of the Work, or license it via written contracts.

**DEFENDANT'S UNAUTHORIZED USE OF THE WORK**

16. Defendant has violated Plaintiff's exclusive rights under the Copyright Laws.

17. Without authorization, Defendant does not have the right to infringe on any of the rights afforded to Plaintiff under the Copyright Laws, which include the right to reproduce, create a derivative work, or otherwise publicly display the Work.

18. These acts constitute copyright infringement when done without authorization of the author or owner of the copyright in the Work.

19. Defendant, IB has, amongst other things, published, reproduced, and publicly displayed the Work without authorization.

20. Defendant, IB, is in a business that directly competes with Plaintiff, namely the licensing of legal content for websites owned and/or operated by the Defendant—or in conjunction with others with whom the Defendant has a business relationship—that cosmetic surgeons and other surgeons utilize and as a source of patients for these surgeons, via the Defendant's unauthorized use of the Plaintiff's Work.

21. Rather than author their own content, Defendant has slavishly copied the Work verbatim, loaded the content onto theirs and several others' websites, and sold or authorized other surgeons to use the content on their websites.

22. The acts of copying the Work and providing the Work verbatim to other surgeons was done willfully and with full disregard for Plaintiff's rights.

23. Defendant, IB, initially made a written offer to purchase said Intellectual property from the Plaintiff, prior to the infringement, but Plaintiff and Defendant did not reach an agreement, with the Plaintiff clearly rejecting the Defendant's ovations for said purchase.  Defendant, IB, elected, willfully, to simply take the Plaintiff's Federally Registered Intellectual Property and use it against the Plaintiff without permission, causing irreparable harm to the Plaintiff and the loss of millions of dollars of potential income due to the Plaintiff, because of the Defendant's illegal theft.  The illegal usage was egregious and willful, and invoke the Courts discretion to impose certain additional damages.

24. Defendant has no defense for their acts of infringement, as they are not authorized to make such use of the Work.

25.     Defendant had access to the Work, as Plaintiff's work had been on-line and made available for public view through the surgeons that were authorized to make use of the Work.  In addition, certain of the Works were subject to prior negotiation—regarding the right to use or license.

26.     The Work, well prior to the acts of infringement by Defendant, was listed at the very top of requests on GOOGLE, and when seeking FCGS, Plaintiff's website is so readily visible that for Defendant to claim that they did not have access would be a fraud on the Court and can be substantiated by Internet Archival records of usage.

27.     Defendant's websites are either verbatim, substantially similar to the Work or derivative.

28.     Defendant's website and the content it sells and allows others to use, display, or otherwise exploit are directly competitive to the services and goods of Plaintiff, hence creating a competitive market for Plaintiff's own Works.  The vast majority of the Plaintiff's Federally Registered Work is so substantially similar to the Defendant's unauthorized usage, that there is identical copying.  (Exhibit C).  As well, there are clear passages of the Plaintiff's Work that has been used in a derivative copyright infringement manner that can be traced back to the Plaintiff's original Work.

29.     Defendant, IB uses the content on its websites to inform the public of its surgical procedure products/services, and does so without authorization from Plaintiff.

30.     Defendant, IB, is using the Work on its website without authorization from Plaintiff (Exhibit C).

31.     Despite a direct refusal from the Plaintiff to sell the Work to the Defendant IB, the Defendant continues to use the Work without authorization from Plaintiff, and do so for financial

gain without benefitting the Plaintiff, and in fact, damaging the Plaintiff's clients and business model by using the Plaintiff's own Work directly against it.

32. Defendant, IB, has so blatantly violated Plaintiff's rights that it has even publicly claimed that it is the owner of the copyright, and that it is the author if the Work, in violation of Plaintiff's right of attribution.

33. Defendant, IB, has made direct attribution of the Work to its own authorship showing ownership to itself.

34. Upon information and belief, Defendant, IB, has allowed the Works to be published on dozens of separate web portal listings, which has seriously caused Plaintiff to lose control over the right to the publication and licensing of the Works.

35. Defendant's acts have caused financial damages to Plaintiff by allowing access to the Work through unauthorized publishers, losing the competitive advantage afforded to the owner of a copyrighted work in the United States.

36. Defendant uses the Work, displays it, publishes it, and otherwise exploits the Work by allowing the consuming public to access the Work on the websites of surgeons that do not subscribe to Plaintiff's service.

37. Defendant's wrongful acts have resulted in damage to Plaintiff by, amongst other things:

   A) driving patient traffic to its own website, which includes sending patients to surgeons of their choosing, and who do not subscribe to Plaintiff's service, thereby "hijacking" potential customers of the Plaintiff;

   B) diverting patients who are either looking for Plaintiff or who would have found Plaintiff 's website if Defendant did not steal the Work; and

C)  greatly improving their search ranking in GOOGLE in a "hot" cosmetic surgical market by using the Work, which is so well written and informative that when reviewed by potential patients and surgeons, it is responsible for directly increasing the business, and trust needed from potential patients.

38. These acts have caused Plaintiff's website traffic to drop significantly, resulting in lost sales that would otherwise have been consummated.

39. The industry accepted standard patient-to-procedure conversion rate is 3-4%, and based on statistical and historical evidence, Plaintiff has lost in excess of 1,500,000 visitors in the years that the Defendant has used the Work, which would have resulted in inquiries and revenue to Plaintiff's subscribing surgeons.

40. Plaintiff's subscribing surgeons pay an average of $1,000 per month to use the Work.

41. Defendant have in or around 250+ surgeons that subscribe to their service, and each would have had to pay Plaintiff for the right to display, reproduce, or otherwise exploit the Work.

42. Plaintiff's losses could be in excess of $70,000.00, per month, and mounting.

43. Defendant has performed said unlawful acts for financial gain.

## COUNT I-FEDERAL COPYRGHT INFRINGEMENT

44. Plaintiff re-alleges and incorporates paragraphs 1 through 43 as if fully set forth herein. herein.

45. Plaintiff owns the Work.

46. Plaintiff has complied with all statutory formalities under Title 17 of the United States Code to maintain this action for copyright infringement.

47. Plaintiff owns the copyrights to the Work.

48. Defendant, IB, senior staff (Vice President & Executive Level management in El Segundo) had access to the Work and in fact, had contacted the Plaintiff, BEFORE the illegal usage asking to purchase it, but Plaintiff refused. The Defendant then willfully took the Work, and other Works of the Plaintiff and used it without permission.

8

49. Defendant's conduct as set forth herein has been without the permission, consent, or license of Plaintiff.

50. Defendant has, by virtue of its above-described acts, directly, contributorily, and vicariously infringed upon Plaintiff's copyright in the Work in violation of 17 U.S.C. § 101 *et seq.*

51. To the extent any entity under Defendant's direct or indirect control has engaged in and is engaging in unlicensed reproduction, use, distribution, and preparation of derivative works of the Work, the same is likewise a direct infringement of Plaintiff's copyrights in the Work in violation of 17 U.S.C. § 101 *et seq.* Upon information and belief, Defendant participates in, exercises control over, and receives a direct financial benefit from such infringement, and thus is vicariously liable for such infringement.

52. Defendant's continued reproduction, use, publication, distribution, preparation of derivative works, and display of advertisements including the Works is a direct infringement of Plaintiff's copyright in the Works in violation of 17 U.S.C. § 101 *et seq.*

53. Further, to the extent Defendant and/or any entity under Defendant's direct or indirect control has infringed and is infringing Plaintiff's copyright in the Work, Defendant, either knowing or with reason to know of such infringement, has induced, caused, or materially contributed to such infringement, and is thus contributorily liable for such infringement.

54. Defendant's infringement of Plaintiff's copyright in the Work is causing irreparable injury to Plaintiff and, unless the injunction sought in this Complaint is granted, will continue to cause irreparable injury to Plaintiff.

55. Plaintiff has suffered and will continue to suffer damage, the exact amount of the damage

being currently unknown to Plaintiff. The damage to Plaintiff is, and will continue to be, irreparable at least because of the continuing nature of the copyright infringement, which would require a multiplicity of suits for damages if the continuance of wrongs is not enjoined.

56. Defendant's acts of infringement have been committed, and are continuing to be committed, with the knowledge that they are infringing and are continuing to infringe Plaintiff's copyright in the Work.

57. Defendant's acts of infringement have been committed willfully.

58. As a result of Defendant's intentional and willful infringement, Plaintiff is entitled to an injunction and damages in a sum to be determined at trial, including but not limited to, actual damages, statutory damages, costs and attorneys' fees and an accounting for all gains, profits and advantages derived by Defendant, as well as any other damages provided for under the Copyright Act.

**WHEREFORE**, Plaintiff requests Trial by Jury and demands judgment against Defendant for:

a) an injunction temporarily, preliminarily, and permanently enjoining and restraining Defendant, its officers, agents, servants, employees, privies, successors and assigns and all other persons acting in concert, participation or combination with it be temporarily, preliminarily, and permanently enjoined from all acts of copyright infringement of the Work;

b) an order directing impounding and destruction or other reasonable disposition of all copies found to have been made or used in violation of Plaintiff's rights;

c) actual damages suffered by Plaintiff as a result of Defendant' infringement;

d) an accounting of Defendant' profits derived from their infringement and an order that the same be paid over to Plaintiff;

e) alternatively to (c) and (d), an award of statutory damages in the amount for each act of infringement of the Work by Defendant;

f) interest on such profits and damages at the highest rate allowed by law;

g) attorneys' fees;

h) costs of this action; and

i) any such other relief as the Court may deem just and appropriate.

Dated: March 14, 2016

                                                Louis R. Gigliotti, P.A.

                                        By: /Louis R. Gigliotti/
                                          Louis R. Gigliotti, Esq.
                                          Florida Bar No.: 71935
                                          1605 Dewey Street
                                          Hollywood, FL 33020
                                          Tel: (954) 471-4392
                                          Email: lgigliotti@bellsouth.net